CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 13 2019

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | Case Nos. 7:15po00249 |
| v. | ) | 7:15po00250 |
| | ) | 7:15po00251 |
| JOHN L. SPESSARD, | ) | 7:15po00252 |
| | ) | |
| Defendant | ) | |
| | ) | By:   Michael F. Urbanski |
| | ) | Chief United States District Judge |
| | ) | |

## MEMORANDUM OPINION

On October 30, 2019, the United States filed motions to dismiss the petty offense charges against defendant John L. Spessard. ECF No. 27.[1] As discussed more fully below, the court **ORDERS** the United States to file amended motions to dismiss and clarify whether it seeks dismissal "solely for reasons related to Spessard's mental condition" pursuant to 18 U.S.C. § 4246(a), or seeks dismissal for another reason, pursuant to 18 U.S.C. § 4246(g). Spessard will be given an opportunity to respond.

## BACKGROUND

Defendant John L. Spessard has a long history of mental illness and has been in and out of mental institutions since the early 1980s. On August 30, 2015 Spessard was cited by a law enforcement officer for failing to stop at a stop sign at the entrance to the Blue Ridge Parkway and Highway 220 in Roanoke County, Virginia. The officer discovered that Spessard's license was suspended and told him to wait for a tow truck to come get his car. The

---

[1] The ECF numbers cited are the same for all four cases.

tow truck driver reported that neither Spessard nor his car were there when the tow truck driver arrived. The ranger went to Spessard's house where Spessard told him he had waited 15 minutes and then left when the tow truck driver did not arrive. The officer subsequently filed petty offense violations against Spessard for two instances of driving on a suspended license, failure to stop at a stop sign, and violation of a lawful order.

At Spessard's initial appearance on October 1, 2015, the court became concerned about his competency and ordered a psychological evaluation. At a competency hearing held on October 5, 2015, the court adopted a report filed by Howard S. Leizer, Ph.D., and found that Spessard was not competent to stand trial. The court ordered that Spessard be committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4241(d) for a determination as to whether there was a substantial probability that in the foreseeable future Spessard would attain the capacity to permit the proceedings to go forward, and for a determination of the existence of insanity at the time of the offense, pursuant to § 4242(a). ECF No. 22.

Spessard was admitted to the mental health unit of FMC-Butner in Butner, North Carolina on November 3, 2015, pursuant to 18 U.S.C. §§ 4241(d) and 4242, where additional mental health evaluations were conducted and the reports were sent to the court. ECF No. 16. On August 3, 2016 the court found, based on the mental health evaluations, that Spessard continued to be incompetent to stand trial and no further treatment would remediate his limitations in the foreseeable future. The court ordered that Spessard continue to be committed to the custody of the Attorney General for a determination of whether his release would create a substantial risk of bodily injury to another person or serious damage to the property of another. ECF No. 22.

2

On September 27, 2016, the United States submitted a "Certificate of Mental Disease or Defect and Dangerousness" which stated that Spessard's release would create such a risk. Suitable arrangements for State custody were not available and the warden at FCI-Butner requested that a hearing be scheduled to determine whether Spessard should remain committed to the mental health department at FCI Butner, in accordance with 18 U.S.C. § 4246(a). ECF No. 23.

The certificate also was filed as ECF No. 1 in <u>United States v. Spessard</u>, No. 5:16-hc-02232-BR in the Eastern District of North Carolina, where FCI-Butner is located. A hearing was held in that court on June 6, 2017, and the court determined that Spessard continued to suffer from a mental disease or defect and that his release would create a substantial risk of bodily injury to another person or serious damage to the property of another. Thus, Spessard was committed to the custody and care of the Attorney General. ECF No. 14 in No. 5:16-hc-2322-BR and ECF No. 16 in the instant case. The docket in the North Carolina case shows that Spessard has since undergone two annual forensic updates, with the last update entered on July 17, 2019.

## APPLICABLE LAW

Spessard currently is committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4246, following a determination made under § 4241 that he was incompetent to stand trial. Section 4241 sets forth the standards for determining mental competency to stand trial or to undergo post-release proceedings. <u>See United States v. Broncheau</u>, 645 F.3d 676, 686 (4th Cir. 2011) (finding § 4241 ensures the integrity of the judicial system by protecting a defendant from criminal proceedings that he cannot understand and barring prosecutors from

pursuing such proceedings against mentally defective defendants). Section 4241(d) provides

that a person may be hospitalized until his mental condition is so improved that trial may

proceed, if the court finds that there is a substantial probability that within a reasonable period

of time he will attain the capacity to permit the proceedings to go forward; or until the pending

charges are disposed of according to law, whichever is earlier. If, at the end of the reasonable

time period, it is determined that his mental condition has not so improved as to permit the

proceedings to go forward, he is subject to the provisions of 18 U.S.C. § 4246 and 4248.[2]

Section 4246 sets forth criteria for continued hospitalization of persons due for release

but who continue to suffer from mental disease or defect.

> **(a) Institution of proceeding.**--If the director of a facility in which a person
> is hospitalized certifies that a person in the custody of the Bureau of Prisons
> whose sentence is about to expire, or who has been committed to the custody
> of the Attorney General pursuant to section 4241(d), or <u>against whom all
> criminal charges have been dismissed solely for reasons related to the mental
> condition of the person</u>, is presently suffering from a mental disease or defect
> as a result of which his release would create a substantial risk of bodily injury to
> another person or serious damage to property of another, and that suitable
> arrangements for State custody and care of the person are not available, he shall
> transmit the certificate to the clerk of the court for the district in which the
> person is confined. The clerk shall send a copy of the certificate to the person,
> and to the attorney for the Government, and, if the person was committed
> pursuant to section 4241(d), to the clerk of the court that ordered the
> commitment. The court shall order a hearing to determine whether the person
> is presently suffering from a mental disease or defect as a result of which his
> release would create a substantial risk of bodily injury to another person or
> serious damage to property of another. A certificate filed under this subsection
> shall stay the release of the person pending completion of procedures contained
> in this section.

18 U.S.C. § 4246(a) (emphasis added). "Section 4246 provides for the indefinite hospitalization

of a [federal prisoner] who is due for release but who, as the result of a mental illness, poses a

---

[2] Section 4248 deals with dangerous sex offenders and is not applicable here.

significant danger to the general public." United States v. Williams, 299 F.3d 673, 676 (8th Cir. 2002). To warrant commitment under § 4246, the government must demonstrate by clear and convincing evidence: "'(1) a mental disease or defect; (2) dangerousness if released; and (3) the absence of suitable state placement.'" Id. (citing United States v. Ecker, 30 F.3d 966, 970 (8th Cir. 1994)). See also United States v. Sahar, 56 F.3d 1026, 1028-1029 n. 1 (9th Cir. 1995) (noting that if a defendant's mental condition does not improve and charges are dismissed for that reason, § 4246 provides for a hearing and, if he remains dangerous, federal commitment unless a state is willing to assume responsibility. "The upshot of this statutory scheme is that if a state continually refuses to accept for treatment in a proper facility an individual who remains dangerous, his federal detention may be indefinite, even though criminal charges against him have been dismissed.")

The United States may seek civil commitment of a defendant by moving to drop charges solely for reasons related to his mental condition and then seek a hearing on whether he should be indefinitely committed. United States v. Copley, 935 F.2d 669, 671-672 (4th Cir. 1991). See also United States v. Fletcher, No. 2:12-CR-184-DRG, 2014 WL 3378662 (D. Maine 2014) (granting motion to dismiss charge against a mentally ill defendant without prejudice and ordering a hearing on dangerousness when government represented that it was moving to dismiss solely for reasons related to the defendant's mental condition); United States v. Hardy, 770 F.Supp.2d 410 (D. Maine 2011) (suggesting that a motion to dismiss without prejudice pending a dangerousness evaluation is a proper way to proceed in a similar case and citing with approval United States v. Godinez-Ortiz, 563 F.3d 1022, 1026, 1031-32 (9th Cir. 2009)).

Section 4246(g) addresses the release of other persons against whom charges have been dropped for reasons unrelated to their mental condition.

> **(g) Release to state of certain other persons.**--If the director of a facility in which a person is hospitalized pursuant to this chapter certifies to the Attorney General that a person, <u>against whom all charges have been dismissed for reasons not related to the mental condition of the person,</u> is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, the Attorney General shall release the person to the appropriate official of the State in which the person is domiciled or was tried for the purpose of institution of State proceedings for civil commitment. If neither such State will assume such responsibility, the Attorney General shall release the person upon receipt of notice from the State that it will not assume such responsibility, but not later than ten days after certification by the director of the facility.

18 U.S.C. § 4246(g) (emphasis added).

In <u>Ecker v. United States,</u> 527 F.Supp.2d 199 (D. Mass. 2007), the court discussed the legislative history of § 4246(g) and noted that the prototypical case that the statute was intended to address was one in which the indictment was dismissed for lack of evidence but the defendant was, in any event found to be dangerous. "In such a case, the Senate Report notes that the prisoner must be released because 'the federal government would not have enough contacts with the person to justify continued federal hospitalization of a person if there were no federal offense involved to justify such hospitalization.'" <u>Id.</u> at 202 (citing S.Rep. No. 225, 98th Cong., 2d Sess. 250, 253, <u>reprinted</u> in 1984 U.S.C.C.A.N 3182, 3422). The court noted that the contacts that may justify a prisoner's detention by the federal government must be related to the crime he is alleged to have committed. A court cannot arbitrarily expand the contacts into concern for the general welfare in the event the prisoner is released, no matter how reasonable such a concern may be. <u>Id.</u>

## CONCLUSION

The motions to dismiss filed by the government ask for dismissal without prejudice, but do not indicate whether the government seeks dismissal "solely for reasons related to Spessard's mental condition," or for another reason. Accordingly, the government is **ORDERED** to file amended motions to clarify the basis on which it seeks dismissal of the petty offense charges against Spessard and whether it seeks continued evaluation of his dangerousness.

The clerk is directed to send a copy of this memorandum opinion to the parties and also to the clerk of court for the Eastern District of North Carolina, with an indication that the opinion is related to the case filed in their court, United States v. Spessard, No. 5:16-hc-02232-BR.

An appropriate order will be entered.

It is so **ORDERED**.

Entered: *11-13-2019*

*/s/ Michael F. Urbanski*

Michael F. Urbanski
Chief United States District Judge